IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ADRIAN CLARK                :        CIVIL ACTION
                            :
        v.                  :
                            :
MICHAEL J. ASTRUE,          :
Commissioner of Social Security  :        NO. 09-0365

## REPORT AND RECOMMENDATION

L. FELIPE RESTREPO                                    OCTOBER 27, 2010
UNITED STATES MAGISTRATE JUDGE

Plaintiff, Adrian Clark, filed this action pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g),

for review of the final decision of the Commissioner of Social Security ("Commissioner"), who

denied plaintiff's applications for disability insurance benefits ("DIB") and supplemental

security income ("SSI") under Title II and Title XVI, respectively, of the Social Security Act

("Act"), 42 U.S.C. §§ 1381-1383f, 401-433. Before the Court are cross-motions for summary

judgment. For the reasons which follow, plaintiff's motion for summary judgment should be

granted insofar as plaintiff requests a remand, and defendant Commissioner's motion should be

denied.

### 1. PROCEDURAL HISTORY

On May 19, 2005, plaintiff filed applications for DIB and SSI alleging disability as of

July 3, 2004, due to, "depression, bipolar disorder, difficulty reading and writing, low back pain,

and Hepatitis C." (R. 36-37.) These applications were denied initially on October 17, 2005 and

upon reconsideration on March 27, 2006. (R. 16, 54, 56-60.)

Plaintiff requested an administrative hearing on May 1, 2006. (R. 44.) On July 17, 2007,

a hearing was held before an Administrative Law Judge ("ALJ"). (R. 563-96.) At the hearing,

plaintiff and a vocational expert ("VE") testified. (R. 587-96.)

On August 3, 2007, the ALJ issued a decision denying plaintiff's claim for benefits. (R.

13-27.) On April 24, 2009, the Appeals Council denied plaintiff's request for review, (R. 4-6),

and the ALJ's decision consequently stands as "the final decision of the Commissioner," (R. 4).

See Sims v. Apfel, 530 U.S. 103, 107 (2000).

Plaintiff subsequently initiated this action, and the parties filed their respective cross-

motions for summary judgment. In support of her summary judgment motion, plaintiff alleges

the ALJ failed to properly weigh and analyze the evidence in the record. See Pl.'s Br. 7-19.

Therefore, plaintiff urges the Court to reverse the Commissioner's final decision and order that

benefits be awarded or, in the alternative, that the case be remanded to the Commissioner for

further proceedings. Id. at 20.

Defendant Commissioner argues that substantial evidence supports the Commissioner's

final decision. See Def.'s Br. 11-24. Therefore, the Commissioner requests that the Court

affirm the denial of benefits to plaintiff. Id. at 24.


## 2.  SEQUENTIAL EVALUATION

The Social Security Act authorizes the Social Security Administration ("SSA") to pay

benefits to persons who have a disability, and defines disability in terms of the effect an

impairment has on a person's ability to function in the workplace. See Barnhart v. Thomas, 540

U.S. 20, 21 (2003). Under the Act, a claimant establishes he has a disability upon demonstrating

his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001).

The SSA has promulgated regulations ("the regulations") which establish a five-step sequential evaluation to determine whether a claimant is disabled. See Ramirez v. Barnhart, 372 F.3d 546, 550 (3d Cir. 2004); 20 C.F.R. §§ 404.1520, 416.920. At **step one**, the SSA will find that a claimant is not disabled if he is engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not working at substantial gainful activity, then the SSA proceeds to **step two** and determines whether the claimant has a "severe impairment."[1] If so, the SSA proceeds to **step three** and determines whether the impairment meets or equals an impairment identified in the Listing of Impairments ("Listings"). See 20 C.F.R. Pt. 404, Subpt. P, App. 1 (hereinafter cited as "Listings"). If the claimant has an impairment which meets the duration requirement and meets or equals a listed impairment, the SSA will find the claimant disabled without considering his age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant does not have an impairment which meets or equals one of the Listings, the inquiry proceeds to **step four,** at which point the SSA assesses whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work.[2] Id. §§ 404.1520(f), 416.920(f). If the claimant can still do his previous work, he will be found to be "not disabled."

---

[1] Under the regulations, a claimant has a severe impairment if he or she has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

[2] RFC is defined as "what [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); see Ramirez, 372 F.3d at 551 n.1.

Id. However, if the claimant is unable to perform his past relevant work, the SSA reaches **step five** and determines whether the claimant "can make an adjustment to other work" that exists in significant numbers in the national economy, considering his RFC together with the vocational factors of age, education, and work experience. Id. §§ 404.1520(g), 416.920(g). If the claimant cannot make an adjustment to other work, the SSA will find the claimant disabled at step five. Id.; see, e.g., Thomas, 540 U.S. at 23-24.

### 3. ALJ'S FINDINGS

In this case, after reviewing the evidence in the record, the ALJ applied the sequential analysis and reached step five, finding that while plaintiff was "unable to perform any past relevant work, . . . there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. 25-26.) Accordingly, the ALJ found that plaintiff "has not been under a disability" as defined in the Act. (R. 27.)

Specifically, the ALJ made the following findings in his decision dated August 3, 2007:

> 1. The claimant meets the insured status requirements of the [Act] through December 31, 2006.
>
> 2. The claimant has not engaged in substantial gainful activity since July 3, 2004, the alleged onset date.
>
> 3. The claimant has the following severe impairment: depression with bipolar component.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> 5. The claimant has the RFC to perform light work except he is limited to simple, routine, low stress, unskilled work that has a sit-stand option every 20-30 minutes and requires little interactions

4

with the general public and supervisors. The claimant needs to avoid climbing stairs, heights, and moving machinery.

6. The claimant is unable to perform any past relevant work as a counselor and commercial cleaner.

7. The claimant was born on November 23, 1958 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of a disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience and RFC, there are jobs that exist in significant numbers in that national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the [Act], from July 3, 2004 through the date of this decision.

(R. 16-27.) Accordingly, the ALJ concluded that plaintiff was not entitled to DIB and not

eligible for SSI under the Act. (R. 27.)


### 4. STANDARD OF REVIEW

Judicial review of the ALJ's final decision is limited, and this Court is bound by the

factual findings of the ALJ if they are supported by substantial evidence and decided according

to correct legal standards. See Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); see also

Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). "The Court has plenary review of legal

issues, but reviews the ALJ's factual findings to determine whether they are supported by

substantial evidence." Scipio v. Astrue, 2010 WL 2349044, *1 (E.D. Pa. June 7, 2010) (citing

Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir.1999)). Despite the deference to

administrative decisions in disability benefit cases, the Court "retain[s] a responsibility to

scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not

supported by substantial evidence." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting

Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate." Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002) (quoting Richardson v. Perales,

402 U.S. 389, 401 (1971)). It consists of more than a mere scintilla of evidence but less than a

preponderance of evidence. Burns, 312 F.3d at 118. Evidence does not serve as substantial

evidence in support of the ALJ's decision if it is overwhelmed by countervailing evidence, and if

the ALJ fails to resolve the conflict between such evidence. Kent v. Schweiker, 710 F.2d 110,

114 (3d Cir. 1983) (citing Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)).


## 5.  DISCUSSION

In support of his summary judgment motion, plaintiff challenges the ALJ's decision at

steps 2 and 3 of the sequential evaluation, as well as the ALJ's RFC finding and correlating

hypothetical posed to the VE at the administrative hearing. See Pl.'s Br. 2-19. Plaintiff urges

the Court to reverse the Commissioner's final decision and order that benefits be awarded or, in

the alternative, that the case be remanded to the Commissioner for further proceedings. Id. at 20.

### (A)    Plaintiff's Affective Disorder

At step three of the 5-step evaluation, the ALJ considers whether the claimant's impairments meet or medically equal an impairment identified in the Listings. 20 C.F.R. §§ 404.1520, 416.920. In this case, plaintiff argues that the ALJ erred in his analysis of the evidence in support of his finding that plaintiff's affective disorder did not meet the requirements under section 12.04 of the Listings.[3] See Pl.'s Br. 7-11.

Under section 12.04, the required level of severity for affective disorders is met when the criteria in parts A **and** B of section 12.04 are satisfied, or when the requirements in part C are satisfied. See Listings § 12.04. In his brief, plaintiff argues that the evidence supports a finding that his mental impairment satisfies the A and B criteria of section 12.04, see Pl.'s Br. 7-10, and in any event, that the ALJ failed to properly analyze all of the evidence in the record in that regard, id. at 10-11, and in making his RFC finding, id. at 12-14, 17-19. Therefore, plaintiff argues that he should be awarded benefits, or in the alternative, that the case should be remanded since the ALJ failed to properly analyze the evidence. Id.

In response, defendant Commissioner acknowledges that "the ALJ determined that . . . plaintiff's depression **met** the paragraph A requirements of § 12.04." See Def.'s Br. 13 (emphasis added). However, the Commissioner contends that plaintiff's mental impairment did not meet the B criteria. See Def.'s Br. 13. Thus, the issue in dispute here with respect to section 12.04 of the Listings is whether the ALJ properly analyzed all the evidence in finding that plaintiff's impairment did not satisfy the B criteria.

---

[3]Under the regulations, "affective disorders" are "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." See Listings § 12.04.

The B criteria of section 12.04 refer to four areas of function. <u>See</u> 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). In order to satisfy the B criteria, a claimant must suffer from an affective disorder "[r]esulting in at least two of the following:"

> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration[.]

<u>See</u> Listings § 12.04.

Here, the ALJ found that plaintiff's mental impairment failed to satisfy any of these functional limitations. (R. 20-21.) In particular, the ALJ found that plaintiff had only a "**mild restriction**" in activities of daily living, "**mild difficulties**" in social functioning, "**moderate difficulties**" in concentration, persistence, or pace, and that plaintiff failed to demonstrate that she experienced any episodes of decompensation. (R. 20-21 (emphases added).) Accordingly, the ALJ concluded that plaintiff's mental impairment did not satisfy the B criteria. (R. 20.)

Plaintiff argues she meets the B criteria of section 12.04, especially in light of the opinion of Frederick Kurz, Ph. D., a state-agency consultant, who examined plaintiff in October 2005, (R. 422-27). <u>See</u> Pl's Br. 8. Among other things, Dr. Kurz completed a Psychological Functional Capacities Evaluation Form indicating that plaintiff had "moderately severe" restrictions of daily activities, and "moderately severe" constriction of interests. (R. 426.) The evaluation further indicated a "moderately severe" impairment in ability to carry out instructions under ordinary supervision, sustaining work-performance and attendance in a normal work-

8

setting, coping with pressures of ordinary work, and performing routine, repetitive tasks under ordinary supervision. (R. 427.) The doctor clarified that plaintiff's impairments were "due to deficits in attention and short-term memory skills." (R. 427.)

Plaintiff argues that the ALJ erred in that "[d]espite [the ALJ's] findings that Dr. Kurz's opinion was 'well-supported' by the record," the ALJ "completely ignored Dr. Kurz's 'moderately severe' findings," and found plaintiffs' limitations were mild. See Pl.'s Br. 10. Plaintiff argues that Dr. Kurz's evaluation referenced plaintiff's "concentration deficits, sleep disturbance, constriction of interests, suicidal thoughts and auditory hallucinations," indicating plaintiff had "marked deficits in daily activities and in persistence, and pace," thus satisfying the B criteria. Id. at 8-9.

Defendant Commissioner contends that Dr. Kurz did not find plaintiff had "marked" deficits in the B criteria, only that plaintiff had "moderately severe" limitations in some areas of functioning. See Def.'s Br. 14. Defendant Commissioner further asserts that the term "moderately severe" in Dr. Kurz's assessment does not have the same meaning as "marked," and that the ALJ fully discussed Dr. Kurz's opinion and gave the opinion significant weight. Id. at 14-16.

In rating the degree of limitation in the first three functional areas of the B criteria (activities of daily living; social functioning; and concentration, persistence, or pace), the regulations direct the use of the following five-point scale: none, mild, moderate, **marked**, and **extreme**. See 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). The term "marked" is defined as "more than moderate but less than extreme." See Listings § 12.00(C). The regulations further state that a "marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to **interfere**

9

**seriously with your ability to function** independently, appropriately, effectively, and on a sustained basis." Id. (emphasis added).

The Psychological Functional Capacities Evaluation Form completed by Dr. Kurz directed the examiner to provide an "estimate regarding the functional aspects" of the claimant, (R. 426), using the following scale: none, mild, moderate, **moderately severe**, and **severe**. (R. 422.) Thus, although Dr. Kurz completed a **state-agency** form, the form curiously directed Dr. Kurz to evaluate plaintiff's restrictions using a scale with different terms than the scale used by the ALJ and the Commissioner and directed by the regulations. Although the first three terms in both scales were identical (none, mild, moderate), instead of the "marked" and "extreme" categories used by the Commissioner and the ALJ under the regulations, see 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4), the state-agency form completed by Dr. Kurz used the terms "moderately severe" and "severe," (R. 427).

Nevertheless, it is reiterated that, under the regulations, for purposes of the B criteria, a "marked" impairment is defined as **"more than moderate but less than extreme,"** and such an impairment **"interfere[s] seriously with your ability to function."** See Listings § 12.00(C) (emphases added). Furthermore, consistent with the scale and definitions of the terms used on the state-agency form completed by Dr. Kurz, "moderately severe" is an impairment which is more than moderate but less than extreme, (R. 427), since "severe" is defined on the form as **"extreme** impairment of ability to function." (R. 427 (emphasis added).) Therefore, the term "moderately severe" on the form is more than moderate but less than extreme. (R. 427.) Moreover, both the regulations' description of "marked," see Listings § 12.00(C), and the state-agency form's definition of "moderately severe," (R. 427), define the respective terms as "an impairment which seriously affects ability to function." Thus, it appears that an impairment

which is "moderately severe" on the form, (R. 427), is considered "marked" under the

regulations, see Listings § 12.04C.

Accordingly, since Dr. Kurz opined that plaintiff's restriction of daily activities was

"moderately severe," it appears that the doctor essentially found that plaintiff satisfied the

"marked restriction of daily activities" requirement of the B criteria. However, the ALJ's

decision fails to specifically acknowledge as such in his decision. Indeed, despite the fact that

the ALJ stated that he "assign[ed] **significant** weight" to Dr. Kurz's Psychological Functional

Capacities Evaluation, which he found "**well-supported by the medical evidence**, including

[plaintiff's] medical history and clinical and objective signs and findings as well as detailed

treatment notes," (R. 24 (emphases added)), the ALJ found plaintiff had only "**mild**" restriction

in activities of daily living, (R. 20 (emphasis added)).

The ALJ's decision also points to plaintiff's "adult function report" and testimony.  (R.

20-23.)  The ALJ stated:

> The claimant reported in his adult function report that he is able to
> watch television, take care of his personal care, prepare meals, do
> laundry, perform housework, iron, go shopping, pay bills, count
> change, handle a savings account, use a checkbook and money
> orders, and follow spoken directions. . . . The claimant testified
> that he is able to provide childcare for his daughter, watch
> television and can follow the storyline, prepare meals for his
> daughter, call and schedule transportation, and read the newspaper.

(R. 20.)  The ALJ later stated that plaintiff "is apparently able to care for a young child at home,

which can be quite demanding both physically and emotionally, without any particular

assistance.  The overall evidence suggests the claimant has the ability to care for himself and

maintain his home." (R. 23.)

However, the ALJ failed to explicitly weigh much of the evidence from plaintiff's adult

function report and testimony.  For example, a review of the evidence reveals that plaintiff

11

testified that watching television was "all right," that he could only "sometimes" follow a story

line, and when asked whether he had "difficulty reading a newspaper," plaintiff responded "yes."

(R. 579.) In plaintiff's adult function report completed on August 2, 2005, when asked whether

he prepared his own meals, plaintiff answered, "I eat sandwiches most of the time or I eat at the

missions." (R. 102.) When asked, how often he prepared food or meals, he answered "some

days I fix my own." (R 102.) He further stated that since the illness, "I don't use the stove much

because of hearing voices." (R. 102.) In the same report plaintiff indicated he could do laundry

but sometimes needed help or encouragement of others. (R. 102.) Plaintiff later stated that he

could only shop with help from his sister because he would "buy thing[s] that I have or things

that we may no[t] need for the house." (R. 102.)

   Furthermore, the ALJ appears to have mischaracterized the evidence regarding

plaintiff's care for his child. The record reveals that plaintiff explained that his sister helps him

care for his child, and the state pays for daycare five days a week where the child receives

breakfast and lunch. (R. 572-73.) When asked who helps around the house and prepares meals,

plaintiff responded, "my sister, Brenda, she does, you know, help me a lot with my, with my

baby." (R. 573.)

   Similarly, although the ALJ found plaintiff had "moderate" difficulties in

"concentration, persistence or pace," and only "mild" restrictions in social functioning, (R. 20),

he failed to mention or explain the weight given to much of the evidence from Dr. Kurz which

may support a finding of more severe restrictions. For example, Dr. Kurz's mental status

examination revealed that "flight of ideas occurred **frequently** throughout the evaluation," and

that plaintiff "***often* had to be re-directed to the task at hand**." (R. 423 (emphases added).)

12

After noting that plaintiff "seemed to give a good effort throughout [the examination]," Dr. Kurz reported:

> [Plaintiff] **had difficulty with attention and concentration and delayed memory**. For example, it took him two trials to recall the words apple, penny, table. After a brief delay he could only recall the word apple and inserted the word orange. He was able to spell the word world in a forward order but not in a reverse. He seemed to become confused by this task.

(R. 424 (emphasis added).) The doctor concluded that plaintiff "appeared to function within borderline to low average levels of intelligence with *significant* **deficits in reading, attention and short term memory skills**." (R. 424 (emphases added).) Dr. Kurz diagnosed plaintiff with, among other things, "Bipolar II disorder depressed with psychotic features," "reading disorder," "[rule out] borderline intelligence," and hepatitis C. (R. 425.) The doctor further concluded that "it appear[ed] unlikely that [plaintiff] would be able to handle his own funds adequately without external supports." (R. 425.) Indeed, the doctor opined that plaintiff was not capable of managing money. (R. 427.)

Moreover, in support of his finding that plaintiff had only moderate difficulties in concentration, persistence or pace, the ALJ pointed to plaintiff's apparent ability to complete the adult function report. In particular, the ALJ stated: "The undersigned notes that the claimant went into great detail answering his adult function report and disability report. This is indicative of an ability to maintain an acceptable level of concentration to perform at least simple tasks." (R. 21).

The regulations state that concentration, persistence, or pace "refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." See C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(3). The regulations direct that the ALJ must exercise "great care" in reaching

13

conclusions about ability to complete tasks, "with an emphasis on how independently, appropriately, and effectively [a claimant is] able to complete tasks on a **sustained** basis." Id. (emphasis added). Furthermore, sporadic and transitory activities such as school, hobbies, housework, vacations, social activities or use of public transportation cannot be used to show an ability to engage continuously in substantial gainful activity. See Fargnoli, 247 F.3d at 40 n.5 (citing Jesurum v. Sec'y of HHS, 48 F.3d 114, 119 (3d Cir. Feb. 6, 1995)); Smith v. Califano, 637 F.2d 968, 971-72 (3d Cir. 1981)) ("It is well established that sporadic or transitory activity does not disprove disability."); Thompson v. Barnhart, 2003 WL 22097002, *9 n.7 (E.D. Pa. Sep. 10, 2003); Thierry v. Bowen, 1989 WL 829, *4 (E.D. Jan. 9, 1989). The issue is whether plaintiff can perform substantial gainful activity on a regular and continuous basis. Davis v. Apfel, 1999 WL 972007, *4 (E.D. Pa. Oct. 25, 1999) (citing Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987)). Here, the ALJ erred to the extent that he cited to sporadic activities, such as plaintiff's single incident of apparently completing the adult function report, to support a finding of non-disability. See Thompson, 2003 WL 22097002, at *9; Thierry, 1989 F. Supp. at *4; Davis, 1999 WL 972007, at *4; see also Fargnoli, 247 F.3d at 40 n.5 (citing Jesurum, 48 F.3d at 119); Smith, 637 F.2d at 971-72.

It is further noted that "[i]n assessing RFC, the [ALJ] **must** discuss the individual's ability to perform sustained work activities in an ordinary work setting **on a regular and continuing basis (i.e. 8 hours a day, for 5 days a week, or an equivalent work schedule)**." Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34474, 34478 (1996) (emphases added) (footnote omitted);[4] see Wallace v. Apfel, 1998 WL 967376, *4 (E.D. Pa. Nov. 24, 1998)

---

[4] Social Security Rulings "are binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1); Walton v. Halter, 243 F.3d 703, 708 (3d Cir. 2001); see Burns, 312 F.3d at 127.

(remanding case for further consideration of plaintiff's RFC because the ALJ failed to apply the standard set out in SSR 96-8p and SSR 96-9p); see also 20 C.F.R. §§ 404.1545(b), 416.945(b); Kangas, 823 F.2d at 777; Nance v. Barnhart, 194 F. Supp.2d 302, 319 (D. Del. 2002). Here, to the extent that the ALJ made a finding that plaintiff had a sufficient RFC to perform other work, (R. 9), it appears that the ALJ failed to discuss the specific issue of whether plaintiff had the ability to perform sustained work activities on a "regular and continuing basis," as he was required to do. This would appear to be particularly significant in this case, in light of the evidence regarding restrictions in plaintiff's concentration, persistence or pace.

The Third Circuit has "repeatedly emphasized that the special nature of proceedings for disability benefits dictates extra care on the part of the agency in developing an administrative record and in **explicitly weighing all evidence.**" Fargnoli, 247 F.3d at 42 (quoting Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979) (emphasis added)); see Coleman v. Chater, 1997 WL 452192, *3 (N.J. July 22, 1997). In analyzing all relevant evidence in the record, the ALJ must provide **an adequate explanation for disregarding or rejecting evidence.** See Reefer v. Barnhart, 326 F.3d 376, 381-82 (3d Cir. 2003); Walter v. Halter, 243 F.3d 703, 710 (3d Cir. 2001).

Where an ALJ fails to give an adequate explanation for conclusions regarding conflicting probative evidence, a case should be vacated or remanded. See Fargnoli, 247 F.3d at 42 (citing Cotter, 642 F.2d at 706); see also Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (where ALJ "fail[ed] to consider and explain his reasons for discounting all of the pertinent evidence before him"); Plummer, 186 F.3d at 429. The ALJ must not only explain the evidence he considered which supports his result, but also provide an indication of rejected evidence and an explanation of whether he is crediting certain testimony or ignoring it. See

15

Cotter, 642 F.2d at 705 ("In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.")

Here, the ALJ's decision fails to explicitly analyze all relevant evidence including the omission and mischaracterization of evidence that may support a finding of more severe impairments. The ALJ failed to give an adequate explanation for conclusions regarding conflicting probative evidence. See Fargnoli, 247 F.3d at 42 (citing Cotter, 642 F.2d at 706); see also Burnett, 220 F.3d at 121 (where ALJ "fail[ed] to consider and explain his reasons for discounting all of the pertinent evidence before him"); Plummer, 186 F.3d at 429. This evidence is relevant to both the ALJ's findings on the Listing, as well as the ALJ's RFC determination.

The Court of Appeals for the Third Circuit has held that "unless the [Commissioner] has analyzed **all** evidence and has **sufficiently** explained the weight [he] has given to obviously probative exhibits, to say that [his] decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Secretary of HEW, 567 F.2d 258, 259 (4th Cir. 1977)) (emphasis added); see Burnett, 220 F.3d at 121; Plummer, 186 F.3d at 429; Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994); Cotter, 642 F.2d at 705. Thus, it cannot be properly said that the ALJ's decision here is supported by substantial evidence, and this case should be remanded to the Commissioner for further analysis of the evidence so that the ALJ can provide an adequate explanation in support of his findings at step three of the sequential evaluation and in making his RFC determination. See Smith v. Barnhart, 54 Fed. Appx. 83, 85-86 (3d Cir. 2002); Burnett, 220 F.3d at 120.

16

## (B) ALJ's Finding at Step 2

Plaintiff challenges the ALJ's failure to make a finding that plaintiff had severe physical and cognitive impairments at step 2 of the sequential evaluation. See Pl's. Br. 15. Defendant Commissioner responds that the medical evidence supports the ALJ's findings that physical and cognitive problems were not severe impairments, as they were treated with medication, were the result of drug use, and resulted in no functional limitations.[5] See Def.'s Br. 21.

Under the regulations at step two, a claimant has a severe impairment if he has "any impairment or combination of impairments which significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). "By contrast, a non-severe impairment has 'no more than a minimal effect' on the individual's ability to perform basic work activities." See Woodson v. Barnhart, 2004 WL 1102363, *6 (E.D. Pa. May 11, 2004) (quoting SSR 85-28, 1985 WL 5685, at *3).

The Third Circuit has stated that although the substantial evidence standard applies at step two of the sequential evaluation, "[t]he burden placed on an applicant at step two is not an exacting one." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004); see Mason v. Barnhart, 2004 WL 3019319, *1 (E.D. Pa. Dec. 28, 2004). The Court of Appeals explained: "Although the regulatory language speaks in terms of 'severity,' the Commissioner has clarified that an applicant need only demonstrate something beyond a **slight abnormality** or a combination of abnormalities which would have no more than a **minimal effect** on an

---

[5]It is noted that to the extent that the Commissioner provides reasons in his brief other than reasons stated by the ALJ to support his findings, the Court "cannot affirm the denial of benefits by substituting the grounds proposed by the . . . Defendant [Commissioner] for those of the ALJ." See Reynolds v. Apfel, 1999 WL 509742, *7-8 (E.D. Pa. July 16, 1999); see also Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001); Fargnoli, 247 F.3d at 44 n.7 (quoting SEC v. Chenery Corp., 318 U.S. 80, 87 (1943)) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

17

individual's ability to work." McCrea, 370 F.3d at 360 (emphases added); see Mason, 2004 WL 3019319, at *1.

Thus, "[t]he step-two inquiry is a *de minimis* screening device to dispose of groundless claims." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). "If the evidence presented by the claimant presents more than a '**slight abnormality**,' the step-two requirement of 'severe' **is met**, and the sequential evaluation process should continue." Id. (emphases added). "Reasonable doubts on severity are to be resolved in favor of the claimant." Id.

Furthermore, "[s]ince it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." See Cotter, 642 F.2d at 706-07 (citation omitted). Therefore, as explained above, although an ALJ must determine credibility to be given evidence, he must indicate sufficient reasons for a conclusion that evidence is not credible, see id. at 707 (citing Gober, 574 F.2d at 776-77).

In this case, a review of the ALJ's decision reveals that although the ALJ did acknowledge plaintiff's physical impairments, (R. 18-20, 24), he failed to analyze or explain why he did not find these impairments "severe." After reviewing the evidence in the record, at step two of the sequential analysis the ALJ stated only the following with regard to the severity of plaintiff's **physical** impairments:

> The record indicates that the claimant has a history of hepatitis C, left leg pain, abscesses, lumbago treated with physical therapy, mild left ventricle hypertrophy, trace to mild mitral regurgitation, gastrogafin extravasation, hiatal hernia, and hypertension. . . . The undersigned took into consideration all the **claimant's other diagnosed conditions**, including hepatitis C which is controlled by medications, and finds that there is minimal clinical evidence to

18

corroborate or support any finding of significant vocational impact
related them [sic].

(R. 20 (emphases added).) Thus, despite the evidence of plaintiff's physical conditions from

plaintiff's treating physicians, the ALJ neither made a finding that such impairments were

severe, nor did he provide an adequate explanation as to **why** he failed to make such a finding.

See, e.g., Dixon v. Barnhart, 2005 WL 113411, *3 (E.D. Pa. Jan. 19, 2005) (the fact that the ALJ

"disregarded, without explanation," among other things, the diagnosis of plaintiff's impairment,

"significantly undermined the reliability of his evaluation").

The ALJ summarized the diagnosed medical conditions of plaintiff, but he failed to

sufficiently analyze and explain the weight given to all the evidence regarding the severity of the

impairments. The record includes extensive evidence detailing plaintiff's chronic back pain, for

which he has taken muscle relaxants, and other pain medication. (R. 146, 149.) The record also

includes notes on examinations and sessions at DYNAMIC Physical Therapy to treat plaintiff's

chronic back pain diagnosed as "lumbago." (R. 315-350.)

The ALJ failed to sufficiently analyze all the evidence in the record, including the

evidence from plaintiff's various visits to Christiana Care Health Services, and his visits to the

physical therapists. See Dobrowolsky, 606 F.2d at 406; see Fargnoli, 247 F.3d at 42; Burnett,

220 F.3d at 121 (quoting Cotter, 642 F. 2d at 705); Coleman, 1997 WL 452192, at *3.

Accordingly, in light of the fact that the ALJ failed to adequately and explicitly weigh **all** the

evidence, the ALJ's analysis was flawed. The case should be remanded for a proper

consideration of the evidence. See, e.g., Cotter, 642 F. 2d at 707; Gober, 574 F.2d at 778.

## 6. CONCLUSION

Under the fourth sentence of 42 U.S.C. § 405(g): "The [district] court shall have power

to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of

Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g)

("Judicial review"); see Matthews v. Apfel, 239 F.3d 589, 593 (3d Cir. 2001). Here, the ALJ

failed to properly and "explicitly weigh[] all [the] evidence," see Fargnoli, 247 F.3d at 42

(quoting Dobrowolsky, 606 F.2d at 406), including medical evidence from Dr. Kurz and

evidence regarding plaintiff's physical impairments.

Since it is the function of the ALJ, not the courts, to evaluate the evidence, see

Fargnoli, 247 F.3d at 42, a remand is appropriate to give the ALJ a further opportunity to

properly analyze all the evidence of record and to take any necessary additional evidence.[6] See

Cotter, 642 F.2d at 707; see also Walton, 243 F.3d at 709. Accordingly, plaintiff's motion for

summary judgment should be granted insofar as plaintiff requests a remand, defendant

Commissioner's motion should be denied, and the case should be remanded to the

Commissioner for further proceedings consistent with this Report and Recommendation.

My Recommendation follows.

---

[6]Having concluded that the case should be remanded for further analysis of the evidence **prior to** the ALJ's evaluation at step 5 of the sequential evaluation, it is unnecessary to reach plaintiff's contention that the ALJ erred by posing inadequate hypothetical questions to the VE. See, e.g., Slayton v. Apfel, 1999 WL 152614, *4 (4th Cir. Mar. 22, 1999) (finding it unnecessary to reach the plaintiff's contentions that the Commissioner failed to meet her burden at the fifth step of the sequential evaluation, where the case was being remanded for further evaluation of the plaintiff's RFC). The ALJ's further evaluation of the evidence on remand may effect his analysis at step 5. Of course, upon further evaluation of the evidence, the ALJ's hypothetical questions must reflect all of plaintiff's impairments supported by the record, and must accurately reflect the limitations included in the ALJ's RFC finding. See Plummer, 186 F.3d at 431; Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).

20

# RECOMMENDATION

**AND NOW**, this 27th day of October, 2010, upon consideration of the cross-motions for summary judgment, for the reasons given in the accompanying Report, it is hereby **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **GRANTED** insofar as plaintiff requests a remand, Defendant Commissioner's Motion for Summary Judgment be **DENIED**, and the case should be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation. A Judgment **REVERSING** the Commissioner's final decision with a **REMAND** should therefore be entered.

L. FELIPE RESTREPO
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ADRIAN CLARK                        :        CIVIL ACTION
                                    :
        v.                          :
                                    :
MICHAEL J. ASTRUE,                  :
Commissioner of Social Security     :        NO. 09-0365

O R D E R

AND NOW, this          day of                          , 2010, upon

consideration of the cross-motions for summary judgment, and after review of the Report and

Recommendation of United States Magistrate Judge L. Felipe Restrepo, it is hereby ORDERED

that:

      1. The Report and Recommendation is APPROVED and ADOPTED;

      2. Plaintiff's Motion for Summary Judgment is GRANTED insofar as plaintiff

requests a remand;

      3. Defendant Commissioner's Motion for Summary Judgment is DENIED;

      4. The matter is REMANDED to the Commissioner, pursuant to sentence four of

42 U.S.C. § 405(g), for further proceedings consistent with the Report and Recommendation of

United States Magistrate Judge L. Felipe Restrepo.

BY THE COURT:

ROBERT F. KELLY, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ADRIAN CLARK | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security | : | NO. 09-0365 |

## J U D G M E N T

AND NOW, this          day of                              , 2010, it is hereby

ORDERED that JUDGMENT is entered REVERSING the final decision of the Commissioner of

Social Security and REMANDING the matter to the Commissioner, pursuant to sentence four of

42 U.S.C. § 405(g), for further proceedings consistent with United States Magistrate Judge L.

Felipe Restrepo's Report and Recommendation, which was approved and adopted by the Court's

separate Order this same date.

BY THE COURT:

_____

ROBERT F. KELLY, J.